Jim L. NAPPER and Wife Jo Ann Napper, Appellants,

v.

Earl B. JOHNSON, Appellee.

No. 4974.

Court of Civil Appeals of Texas, Waco.

Feb. 4, 1971.

Rehearings Denied March 4, 1971.

————◆————

Charles Ben Howell, Dallas, for appellants.

Anderson, Henley, Shields, Bradford & Pritchard, W. A. Pritchard, Dallas, De-Lange, Hudspeth, Pitman & Katz, Eugene J. Pitman, Houston, for appellee.

## OPINION

McDONALD, Chief Justice.

This is an appeal by plaintiffs Napper and wife from a take nothing judgment, in a suit to cancel an instrument in the form of a deed, which plaintiffs executed to defendant Johnson on their home. Plaintiffs assert the instrument was intended to operate as a mortgage.

Plaintiffs sued defendant alleging they owned their home in Dallas; that they requested a $15,000. loan from defendant; that defendant to mask the real effect of the transaction required plaintiffs to sign a deed to their property; that the deed is void because in truth and in fact it was an intended mortgage. Plaintiffs prayed for cancellation of the deed and that defendant be mandatorily enjoined to convey and return to plaintiffs their property.

Trial was to a jury which found:

1) Plaintiffs Napper and wife intended the instrument they signed to operate as a mortgage on the property, to secure the amount disbursed by defendant Johnson at the time, rather than an absolute conveyance of such property.

2) Defendant neither knew nor should have known that plaintiffs Napper intended the instrument to operate as a mortgage on the property in question.

The trial court rendered judgment on such verdict that plaintiffs take nothing.

Plaintiffs appeal on 15 points contending among other things, the jury's answer to Issue 2 is so against the great weight and preponderance of the evidence as to be manifestly unjust.

Plaintiffs Napper and wife bought the property here involved on February 11, 1966 from W. D. Sims and wife. It was their homestead. The purchase price was $14,950; and the Nappers executed a deed of trust and vendor's lien note for the amount not paid in cash.

During 1966 plaintiffs moved to Arkansas, and rented their home in Dallas. On January 29, 1969 plaintiffs were in arrears on the note to the Sims, and Sims caused the property to be posted for foreclosure. Plaintiff sought the services of lawyer Pritchard to prevent the foreclosure. Prichard advised plaintiff he had no legal recourse against Sims, but he, Prichard would help plaintiff secure a loan. On February 6, 1969 Pritchard wrote plaintiff that payoff on the Sims note would require $13,009.81, and the best loan which could be expected was a six months loan at 10%. On February 13, 1969 Pritchard wrote plaintiff he had discussed the matter with a wealthy individual he had placed loans with before, and that "he was leary of making a loan for $13,009.81 * * * however, he agreed to advance such funds provided the property is deeded to him, and he will give you a written option to repurchase for $13,660.30". Pritchard thereafter told plaintiffs the transaction was a loan, but that it was necessary to handle the loan in this manner, "because of the homestead law".

It was thereafter agreed that defendant would provide $15,000 and that the amount returnable to him at the end of 6 months would be $15,750. Out of the $15,000 provided by defendant $13,041.42 was paid Sims; $94.89 was paid for taxes; $132. paid for title policy; $440. paid Pritchard for attorneys fee; and $1291.50 turned over to plaintiffs. Plaintiffs executed a deed to defendant to the property, and defendant and plaintiffs executed an option contract whereby plaintiffs could repurchase the property for $15,750 up to 180 days from February 25, 1969.

As the 180 day period began to run out plaintiff applied to lawyer Pritchard for an extension. Pritchard advised he would have to talk with defendant Johnson. The matter had not been resolved by August 21, 1969 when plaintiff came to Dallas to see what could be done. He could not get an answer from Pritchard. On August 25 Pritchard advised plaintiff that Johnson would give no extensions. Plaintiff secured present counsel and raised $15,750. in cash, and on August 26 took same to Johnson's office which was closed; then went to Johnson's house to tender the money, where Johnson's wife told plaintiff that Johnson was out of town, and that lawyer Pritchard took care of his business. (Johnson contends the tender was one day late).

Lawyer Pritchard prepared all papers. Defendant Johnson testified that he was reluctant to advance the $15,000. but "went ahead and made a deal on it anyway, on the basis if I lost (Pritchard) would pay half of it". Q: That was your agreement with Mr. Pritchard. A: Yes and "On the other hand Mr. Pritchard was to get one half of the profit if we made any money." The record reflects that Pritchard thereafter gave Johnson a check for $7875. for "undivided interest" in "property located at 13211 Emily", and Johnson wrote Pritchard "This will confirm the fact that you have paid me in full for an undivided one-half interest in the property".

A litigant's direct unqualified testimony regarding his personal knowledge is binding on him, and defendant Johnson testified that Pritchard had a one-half interest in the transaction from the outset. Pritchard and defendant Johnson were partners in the transaction and Pritchard's knowledge or what he should have known, is binding on defendant Johnson. And the record discloses Pritchard and Johnson had participated together in other lending transactions; that Pritchard was Johnson's personal lawyer, and Johnson testified he "asks his (Pritchard) advice on any matter pertaining to property we own together or I own".

There is circumstantial evidence that lawyer Pritchard did in fact keep defendant Johnson fully advised and that defendant "should have known" and probably actually knew of the representations made to plaintiffs and of plaintiff's intentions as to the transaction. In any event, Pritchard and Johnson were and are partners in the transaction, and Pritchard's knowledge is binding on Johnson.

The record further discloses that a Mrs. Burns was renting the property from plaintiffs for $50. per month; that on August 28, 1969 lawyer Pritchard notified Mrs. Burns to pay the rent thereafter to defendant Johnson; that she paid to Johnson one month, and thereafter resumed paying rent to plaintiffs. Defendant Johnson, though he has a deed to the property since February 1969 did nothing to collect rent or exercise any possessory rights until August 28, 1969. This is strange conduct if he really considered he bought the property back in February. This is logical conduct if defendant only held a mortgage to the property. Retention of possession by plaintiff is a circumstance indicating a mortgage and not a sale. Wood v. DeWinter, Tex. Civ.App. (NWH) 280 S.W. 303; Ruffier v. Womack, 30 Tex. 332; Hubby v. Harris, 68 Tex. 91, 3 S.W. 558; Bemrod v. Heinzelman, Tex.Civ.App., Er.Dism., 263 S.W. 951.

■ Finally the record reflects the property is worth $50,000. to $60,000. This is circumstantial evidence that defendant should have known that the transaction was intended to operate as a mortgage. Temple Nat. Bk. v. Warner, 92 Tex. 226, 47 S.W. 515; Moorhead v. Ellison, Er.Ref., 56 Tex. Civ.App. 444, 120 S.W. 1049; Norton v. Lea, Tex.Civ.App. (NWH) 170 S.W. 267; Wood v. DeWinter, supra. See also: Bradshaw v. McDonald, 147 Tex. 455, 216 S.W. 2d 972; Wilbanks v. Wilbanks, Tex., 330 S.W.2d 607; Thigpen v. Locke, Tex. 363 S.W.2d 247; Maxey v. Citizens National Bank, Tex.Civ.App. (NWH), 432 S.W.2d 722.

■ From the record as a whole we think the finding that defendant did not know or should not have known plaintiffs intended the instrument to operate as a mortgage is against the great weight and preponderance of the evidence. Plaintiffs' contention is sustained. In re Kings Estate, 150 Tex. 662, 244 S.W.2d 660.

The case is reversed and remanded. In view of the unlikelihood of other matters plaintiffs complain of arising on another trial, we do not pass on same.

Reversed and remanded.