COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-302-CV

 

 

PHIL PATTERSON, INDEPENDENT                                           APPELLANT

ADMINISTRATOR
OF THE ESTATE

OF
DANIEL MADISON MYRACLE,

DECEASED

 

                                                   V.

 

GARY McMICKLE, INDIVIDUALLY                                            APPELLEES

AND
D/B/A CREATIVE CAPITAL, INC.,

McMICKLE
ASSOCIATES, INC.,

AND
CREATIVE CAPITAL, INC.

 

                                              ------------

 

          FROM
COUNTY COURT AT LAW NO. 1 OF WICHITA COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

                                       I.  Introduction








This is a summary judgment
appeal.  Appellant Phil Patterson (APatterson@),
Independent Administrator of the Estate of Daniel Madison Myracle (ADaniel@), Deceased,
challenges the trial court=s granting of summary judgment in favor of Appellees Gary McMickle,
Individually and d/b/a Creative Capital, Inc., McMickle Associates, Inc., and
Creative Capital, Inc. (AMcMickle@).  In a single issue, Patterson
complains that the trial court erroneously granted McMickle=s motion for summary judgment because he produced evidence raising
fact issues regarding the elements challenged by McMickle.  Because we hold that Patterson did not
present controverting evidence raising a genuine issue of material fact, we
will affirm.

                   II.  Factual and Procedural Background

In 1994, Sharnae Myracle (ASharnae@), Daniel=s mother, retained Mark Mueller to pursue a medical negligence claim
against various defendants alleged to have provided substandard care during the
birth of Daniel.   Mueller subsequently
filed a lawsuit on behalf of Daniel in 1995 styled AD.M., a Minor, By and Through His Parent and Next Friend, S.M. v.
Wichita General Service Corp., et al.@








During the pendency of the
suit, Mueller moved to have a guardian ad litem appointed to represent Daniel=s interests because Mueller was concerned about issues relating to
Daniel=s care and living conditions at home and Sharnae=s fiscal responsibility.  The
trial court granted the motion and appointed Joe Steimel (ASteimel@), a
licensed attorney, to serve as Daniel=s guardian ad litem.  Steimel
met with Sharnae and Daniel at his office on two separate occasionsConce to meet Daniel and Sharnae, to learn about the care Daniel
required, and to discuss the suit, and a second time to discuss investigations
performed by Child Protective Services into allegations of neglect, both
physical and supervisory, involving Daniel. 

Anticipating a possible
settlement, Mueller engaged the services of McMickle,  an annuity broker experienced in the business
of structuring settlements.  McMickle had
worked with Mueller on numerous other lawsuits. 
McMickle averred in his affidavit that Mueller merely wanted him to run
price quotes on particular annuities from different companies.  McMickle complied and completed a 200-page
analysis of the various markets that were selling annuities.  McMickle also attended two mediations between
the parties, the first in June 1999 and a second in August 1999. 

McMickle met with Sharnae at
the June 1999 mediation to discuss in general financial issues related to the
settlement of the suit, such as the process of settlement structures and rated
age charts.  McMickle spoke with Steimel
at the second mediation about general issues concerning settlement structures
and rated age charts and briefly sometime thereafter about the quality of life
markets. 








The parties ultimately
reached a settlement in the amount of $5,050,000.  After attorneys= fees and costs, Daniel received between $2,900,000 and
$3,000,000.  Of that amount, one-third
was placed in a Section 142 trust for Daniel=s benefit, and the remaining two-thirds was used to purchase two
annuities.[1]  The first annuity provided for monthly
payments of $7,679.85, guaranteed for ten years and then for the life of
Daniel.[2]  The second annuity and final one-third of the
amount Daniel recovered was used to purchase a deferred annuity that provided
for monthly payments of $42,007.97 for the life of Daniel, beginning fifteen
years after the settlement. 








The second, deferred,
life-only annuity did not have a guaranteed refund of the premium.  Both Mueller and McMickle thought it was
appropriate for the second annuity to be deferred for fifteen years without a
guaranteed return of the premium. 
Mueller considered that the monthly payments would be significantly
higher because of the non-refund, that the payments would begin at a time when
Sharnae=s support systems were declining, and that the deferred payments would
provide an incentive to Sharnae to take care of Daniel and avoid certain
personal  situations.  Mueller provided Steimel with a document
summarizing the annuity benefits for Daniel. 
The document indicated a guaranteed yield for the second annuity in an
amount of $0.00.  The settlement
agreement indicated that payments were to begin in November 2014 A(if Daniel Myracle is then living)@ and thereafter each month Aduring the lifetime@ of Daniel.

McMickle did not have any
detailed discussions with Sharnae or Steimel about the second annuity at any
point during the pendency of the suit. According to McMickle, it was his
understanding based on past dealings with Mueller that all communications went
through Mueller and that Mueller controlled the dissemination of information. 








The trial court held a
settlement hearing on October 18, 1999. 
At the hearing, Sharnae represented to the court that the settlement was
in Daniel=s best
interests, that the deferred nature of the payments was fair and equitable,
that the purpose of the settlement was to take care of Daniel, not her, and
that the payments were designed to maximize the benefits over Daniel=s lifetime. Sharnae testified that she understood Athat some of these payments are deferred.  Some of them start immediately, but some of
them are deferred over time that are payable only for Daniel=s life.@  Steimel represented to the court that he
thought the settlement was in Daniel=s best interests and that he thought it was a Agood settlement.@  The trial court approved the settlement and
trust. 

Daniel died on October 30,
2000, one year after the settlement and fourteen years before the second
annuity was to begin monthly payments. Daniel=s estate is not entitled to any payment or refund from the second
annuity because it did not have a guaranteed return of premium. 

Patterson sued Mueller and
McMickle on behalf of Daniel and his estate, alleging claims for negligence,
breach of fiduciary duty, Deceptive Trade Practices Act (ADTPA@)
violations, and fraud.  Patterson
alleges, among other things, that McMickle misrepresented the settlement terms,
failed to properly advise Daniel=s next friend of the terms of the structured settlement, and failed to
adequately disclose information that Daniel=s next friend would have relied on in making a decision to approve the
settlement=s
terms.  Patterson did not sue Steimel. 








McMickle moved for summary
judgment, arguing, among other things, that all allegations of improper acts
and omissions by McMickle against Sharnae or Daniel=s estate were irrelevant because Steimel displaced Sharnae as Daniel=s legal representative when he was appointed Daniel=s ad litem and thus, McMickle owed no duty to Sharnae; that McMickle
never made any type of representation that the deferred annuity had any
guarantee of premium; and that collateral estoppel barred Patterson=s entire suit.  The trial court
granted McMickle=s motion but
did not state the grounds upon which the motion was granted.  McMickle later filed a motion to sever the
claims against him, which the trial court granted.  Patterson subsequently filed a motion for new
trial, which was overruled by operation of law. 
This appeal followed.

III.  Standard of Review

In a summary judgment case,
the issue on appeal is whether the movant met the summary judgment burden by
establishing that no genuine issue of material fact exists and that the movant
is entitled to judgment as a matter of law. 
Tex. R. Civ. P. 166a(c); Sw.
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); City of
Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).  The burden of proof is on the movant, and all
doubts about the existence of a genuine issue of material fact are resolved
against the movant.  Sw. Elec. Power
Co., 73 S.W.3d at 215.








When reviewing a summary
judgment, we take as true all evidence favorable to the nonmovant, and we
indulge every reasonable inference and resolve any doubts in the nonmovant's
favor.  Valence Operating Co. v.
Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  Evidence that favors the movant=s position will not be considered unless it is uncontroverted.  Great Am. Reserve Ins. Co. v. San Antonio
Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).

A defendant who conclusively
negates at least one essential element of a cause of action is entitled to
summary judgment on that claim.  IHS
Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason, 143 S.W.3d
794, 798 (Tex. 2004).  Once the defendant
produces sufficient evidence to establish the right to summary judgment, the
burden shifts to the plaintiff to come forward with competent controverting
evidence raising a genuine issue of material fact with regard to the element
challenged by the defendant.  Centeq
Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995).

IV.  McMickle=s Summary Judgment

A.  Negligence and Breach of Fiduciary Duty
Claims








As Patterson acknowledges,
McMickle moved for summary judgment by attempting to negate the duty element of
Patterson=s causes of
action.[3]
Patterson argues that the trial court erred by granting McMickle summary
judgment because Patterson produced evidence raising a genuine issue of
material fact as to the existence of a duty owed to Sharnae.  McMickle argues that he owed no duty to Sharnae
because Steimel displaced her as Daniel=s personal representative once the trial court appointed Steimel as
guardian ad litem.  McMickle maintains
that, at most, he owed duties to Mueller and Steimel in their capacities as
Daniel=s representatives. 








Rule 173 of the Texas Rules
of Civil Procedure allows a trial court to appoint a guardian ad litem when a
minor is represented by a next friend or guardian who appears to have an
interest adverse to that of the minor.  Tex. R. Civ. P. 173.  The trial court must appoint a guardian ad
litem if it determines that a conflict exists. 
Byrd v. Woodruff, 891 S.W.2d 689, 704-05 (Tex. App.CDallas 1994, writ dism=d by agr.).  Once appointed, the
guardian ad litem displaces the next friend and becomes the personal
representative of the minor for the duration of the case or until such time as
the trial court determines the conflict has been removed.  Delcourt v. Silverman, 919 S.W.2d 777,
784 (Tex. App.CHouston
[14th Dist.] 1996, writ denied), cert. denied, 520 U.S. 1213 (1997); Byrd,
891 S.W.2d at 705; see also Newman v. King, 433 S.W.2d 420, 421 (Tex.
1968); Rodriguez v. Maxson, No. 03-02-00047-CV, 2002 WL 31833553, at
*2-3 (Tex. App.CAustin Dec.
19, 2002, pet. denied) (not designated for publication).  The appointment of a guardian ad litem and a
settlement hearing are often necessary in compromising any suit involving a
minor.  Byrd, 891 S.W.2d at 705.

McMickle produced summary
judgment evidence that he was hired by Mueller as a structured settlement
specialist.  He described himself as an
expert witness brought in to analyze the life care plan that was developed, to
help with negotiations, and to respond to requests for proposals.  McMickle averred in his affidavit that
Mueller merely wanted him to run price quotes on particular annuities from
different companies.  Mueller moved to
have a guardian ad litem appointed to represent Daniel=s interests pursuant to Rule 173. 
Once appointed, Steimel displaced Sharnae and became Daniel=s personal representative.  The
trial court did not discontinue Steimel=s role as Daniel=s guardian
ad litem before the parties settled.








Assuming without deciding
that McMickleCa structured
settlement expert hired by Mueller to run price quotes on various annuitiesCowed a duty, any duty owed would be to Mueller and possibly Steimel,
Daniel=s representative, and not to Sharnae, a party determined by the trial
court to appear to have an interest adverse to that of Daniel.  See Tex.
R. Civ. P. 173.  While such a duty
might be owed to Sharnae by Mueller because Mueller was representing Daniel
through Sharnae, as Daniel=s next friend, it would be incongruous for us to hold that McMickle
simultaneously owed a duty to Daniel=s personal representative and to a party who had an apparent conflict
of interest with Daniel.  Such a holding
would effectively render Steimel=s appointment pursuant to Rule 173 meaningless.  We hold that McMickle produced summary
judgment proof conclusively negating the duty element of Patterson=s negligence and breach of fiduciary duty claims as a matter of
law.  See Mason, 143 S.W.3d
at 798.  Consequently, it was incumbent
upon Patterson to come forward with competent controverting evidence raising a
genuine issue of material fact on the issue of McMickle=s alleged duty to Sharnae.  See
Siegler, 899 S.W.2d at 197. 

Patterson argues that Steimel
did not displace Sharnae as Daniel=s personal representative because there was no conflict of interest
between Sharnae and Daniel.  He contends
that Mueller sought the appointment of a guardian ad litem because there was
evidence that Sharnae abused and neglected Daniel but that Mueller made no such
showing to the trial court. Patterson points to summary judgment evidence of
CPS records indicating that the claims of neglect were unsubstantiated.  Even if the claims of neglect were
unsubstantiated, the propriety of the trial court=s decision to appoint a guardian ad litem is not at issue here, and
Patterson may not show that McMickle owed Sharnae a duty by collaterally
attacking the trial court=s decision
to appoint Steimel as Daniel=s guardian ad litem.








Patterson also argues that
Sharnae was the one who hired Mueller and that the contingency fee agreement
with Mueller identified her as Daniel=s next friend.  This evidence,
however, fails to take into account the appointment of Steimel as Daniel=s guardian ad litem, as discussed above.








Patterson finally argues that
McMickle admitted that he owed a duty to Steimel and that a fact issue exists
regarding the duty owed to ADaniel=s
representative.@  Patterson refers us to a statement made by
McMickle in his deposition testimony in which McMickle stated that he had a
duty to do the best job he could in educating the parties that needed to be
educated about structured settlements. 
However, Patterson=s relevant
allegations of negligence and breach of fiduciary duty all relate to acts or
omissions by McMickle with regard to Daniel=s next friend, Sharnae, not Steimel.[4]  Patterson thus failed to meet his burden to
produce evidence raising a genuine issue of material fact.  Accordingly, the trial court properly granted
McMickle=s motion for summary judgment on Patterson=s negligence and breach of fiduciary claims.

 

 

B.  Fraud, Fraudulent and
Negligent Misrepresentation, and DTPA Claims

 

Patterson argues that
McMickle was not entitled to summary judgment because he raised a fact issue as
to whether McMickle failed to disclose facts and information to Sharnae and
Steimel when he had a duty to do so. 
McMickle argues that he was entitled to summary judgment because he did
not have a duty to Sharnae and because he never made any representation to
anyone that the deferred annuity had a guarantee of premium.








The failure to disclose
information does not constitute fraud in the absence of a duty to
disclose.  Bradford v. Vento, 48
S.W.3d 749, 755 (Tex. 2001).  In support
of his argument that McMickle had a duty to disclose information to Sharnae,
Patterson argues that A[f]iduciaries
owe their clients the duty of loyalty and utmost good faith, the duty of
candor, the duty to act with integrity, and the duty to fully disclose all
material facts.@  But we have determined above that McMickle
conclusively negated the duty element of Patterson=s breach of fiduciary duty claim as a matter of law because Sharnae
was displaced as Daniel=s
representative; without a duty to disclose information to Sharnae, McMickle was
entitled to summary judgment on Patterson=s fraud claims as a matter of law.

Patterson points to summary
judgment evidence that McMickle had only one, general conversation with Sharnae
about settlement structures and that McMickle did not discuss the annuities in
detail with Sharnae or Steimel in his attempt to put on controverting evidence
raising a fact issue.  However, the
evidence set forth by Patterson goes to whether McMickle breached a duty, not
to the existence of a duty, and, again, Patterson=s allegations in his petition relate to acts or omissions by McMickle
with Daniel=s next
friend, Sharnae, not Steimel.[5]








To the extent Patterson
argues that McMickle made false representations to Sharnae with the intent to
induce her to enter into the settlement agreement, we note that a cause
of action for fraud and fraudulent misrepresentation both require proof of a
false representation, and a negligent misrepresentation claim requires proof
that the defendant has provided false information.  Fed. Land Bank Ass=n of Tyler v. Sloane, 825 S.W.2d
439, 442 (Tex. 1991); Malone v. Sewell, 168 S.W.3d 243, 252 (Tex. App.CFort Worth 2005, pet. denied); Baribeau v. Gustafson, 107
S.W.3d 52, 58 (Tex. App.CSan Antonio
2003, pet. denied).  McMickle
produced evidence showing that he had prepared a ASchedule of Annuity Benefits@ stating that the deferred annuity had a guaranteed yield of zero and
that he had never made any representation that the deferred annuity had or
should have had a guarantee of premium or payment.  Patterson did not produce controverting
evidence that McMickle made any representation that the deferred annuity had a
guarantee of premium.








Patterson also briefly argues
that he raised a fact issue as to whether McMickle failed to disclose
information about the settlement structure and annuities to Sharnae and Steimel
in violation of Section 17.46(b)(24) of the DTPA.  See Tex.
Bus. & Com. Code Ann. ' 17.46(b)(24) (Vernon Supp. 2005). 
To prevail on a claim for failure to disclose under the DTPA, Patterson
must prove (1) the defendant knew information regarding the goods or services,
(2) the information was not disclosed, (3) there was an intent to induce the
consumer to enter into the transaction through the failure to disclose, and (4)
the consumer would not have entered into the transaction had the information
been disclosed.  Id.; Gill v.
Boyd Distrib. Ctr., 64 S.W.3d 601, 604 (Tex. App.CTexarkana 2001, pet. denied). 
Mere nondisclosure of material information is not enough to establish an
actionable DTPA claim.  Head v. U.S.
Inspect DFW, Inc., 159 S.W.3d 731, 744 (Tex. App.CFort Worth 2005, no pet.); Century 21 Real Estate Corp. v. Hometown
Real Estate Co., 890 S.W.2d 118, 126 (Tex. App.CTexarkana 1994, writ denied). 
The plaintiff must also show that the information was withheld with the
intent of inducing the consumer to engage in a transaction.  Willowbrook Foods, Inc. v. Grinnell Corp.,
147 S.W.3d 492, 507 (Tex. App.CSan Antonio 2004, pet. filed).








Patterson directs us to
summary judgment evidence that McMickle had one limited conversation with
Sharnae, that McMickle had no further conversations with Sharnae regarding the
annuities thereafter, and that McMickle was Awell aware of Mueller=s dislike for Sharnae.@  Assuming that the Atransaction@ here was
Sharnae=s entering into the settlement agreement, Patterson produced no
evidence that McMickle withheld information with the intent to induce her into
the agreement.  Patterson=s mere allegation of McMickle=s failure to disclose information is insufficient.  Thus, we hold that Patterson failed to
produce competent controverting evidence raising a genuine issue of material
fact as to his fraud, fraudulent and negligent misrepresentation, and DTPA
claims.  The trial court properly granted
McMickle=s motion for summary judgment on Patterson=s fraud, fraudulent and negligent misrepresentation, and DTPA
claims.  Accordingly, for these reasons,
we overrule Patterson=s sole
issue.

 

 

V.  Conclusion

Having overruled Patterson=s issue, we affirm the trial court=s judgment.  

DIXON W. HOLMAN

JUSTICE

 

PANEL
A:  CAYCE, C.J.; LIVINGSTON and HOLMAN,
JJ.

 

DELIVERED:
April 6, 2006

 











[1]Section
142 of the Texas Property Code provides, AIn a suit in which a minor or
incapacitated person who has no legal guardian is represented by a next friend
or an appointed guardian ad litem, the court, on application and hearing, may
provide by decree for the investment of funds accruing to the minor or other
person under the judgment in the suit.@  Tex.
Prop. Code Ann. ' 142.001(a) (Vernon Supp.
2005).  The trust, which is sometimes referred to as
a special needs trust in portions of the record, was apparently created to
manage funds from an earlier partial settlement of the same suit.





[2]According
to the record, this meant that the annuity would pay for at least ten years and
then for as long as Daniel lived thereafter.





[3]The
existence of a fiduciary relationship is an element of a breach of fiduciary
duty claim, Punts v. Wilson, 137 S.W.3d 889, 891 (Tex. App.CTexarkana
2004, no pet.), and a legal duty is an element of a claim for professional
malpractice based in negligence, Deloitte & Touche v. Weller, 976
S.W.2d 212, 215 (Tex. App.CAmarillo 1998, pet. denied)
(op. on reh=g), cert.
denied, 526 U.S. 1117 (1999).  





[4]Patterson
alleged that McMickle was negligent by Afailing to require that the
annuities purchased have some guarantee of payments that would ensure the
recovery of the present value of the annuity as represented to Daniel=s
next friend@ and
by Afailing
to properly advise Daniel=s next friend as to
the terms of the structured settlement.@ [Emphasis added.]  Patterson also alleged that McMickle breached
a fiduciary duty owed to Daniel=s next friend.  Sharnae was Daniel=s
next friend, not Steimel.  Patterson
does, however, allege that McMickle failed to adequately protect Daniel=s interests
in procuring a recovery on Daniel=s behalf, but that was
Mueller=s
responsibility, not McMickle=s.





[5]Patterson
alleged in his petition that McMickle Amade material representations
regarding the annuities purchased with funds from the settlement agreed to by Daniel=s
next friend, which was false and made with the intention of
inducing Daniel=s
next friend to enter the settlement@;
that McMickle Awas
aware that such representations were false when made and intended for Daniel=s
next friend to rely upon them@; and
that ADaniel=s
next friend did rely on@ McMickle=s
representations. [Emphasis added.] 
Patterson=s
DTPA claim, discussed infra, similarly alleges acts or omissions by
McMickle towards Daniel=s
next friend, not Steimel.