George W. KELLEY, Petitioner,

v.

Roy RINKLE, Respondent.

No. B–5494.

Supreme Court of Texas.

Jan. 21, 1976.

Rehearing Denied Feb. 25, 1976.

McMullen & Snyder, Stephen C. Porter and Waylon E. McMullen, Dallas, for petitioner.

Coke & Coke, Robert M. Roller, Dallas, for respondent.

DOUGHTY, Justice.

George W. Kelley, petitioner, sued Roy Rinkle, respondent, for damages caused by Rinkle's filing of a report with Credit Bureau Services, Inc., which report stated that Kelley owed Rinkle $277.00 for medical and dental services rendered by Rinkle. Kelley alleged that the report was false and libelous and that Kelley did not owe Rinkle any money. The trial court granted Rinkle's motion for summary judgment on the ground that Kelley's suit was filed more than one year after his cause of action accrued and was therefore barred by the statute of limitations. Tex.Rev.Civ.Stat. Ann. art. 5524 (1958). The Court of Civil Appeals has affirmed. 524 S.W.2d 806. We reverse the judgment and remand the cause to the trial court for a trial on the merits.

The proof submitted on summary judgment, construed in the light most favorable to petitioner, establishes the following facts: on March 13, 1973, Rinkle submitted a "Voluntary Report" to Credit Bureau Services, Inc., a credit agency to which Rinkle was a subscriber, stating that George W. Kelley owed $277.00 to Rinkle on an account which was past due. Merle Young, an employee of Credit Bureau Services, states in her affidavit that this is the only report ever furnished by Rinkle on Kelley.

In Kelley's affidavit he states that he had no knowledge of the existence of the report until August 29, 1973. Prior to that date and beginning during the months of April and May of 1973, Kelley states that he received several letters from various businesses to which he had applied for credit, informing him that he could not receive credit "based upon information which those business firms had received from Credit Bureau Services . . . ." On August 29, 1973, Kelley went to Credit Bureau Services in order to discover the nature of the information which they had supplied to the businesses denying him credit; there he first learned of the report filed by Rinkle. Personnel at Credit Bureau Services also told him that the first request for information about his credit status was from Atlantic Richfield in April of 1973. Attached to Kelley's affidavit are two letters to Kelley, one from Phillips Petroleum Company dated April 30, 1973, and one from Woolf Brothers dated May 2, 1973, each informing Kelley that credit had been denied him based in part on information obtained from Credit Bureau Services. Kelley filed this suit against Rinkle on March 26, 1974, seeking $5,000.00 in actual damages plus exemplary damages and attorney's fees.

Tex.Rev.Civ.Stat.Ann. art. 5524 (1958) provides:

> There shall be commenced and prosecuted within one year after the cause of action shall have accrued, and not afterward, all actions or suits in courts of the following description:
>
> (1) Actions for malicious prosecution or for injuries done to the character or reputation of another by libel or slander.
> * * *

The question presented is: when did Kelley's cause of action accrue?[1]

Assuming that the report is libelous, as we must for purposes of summary judgment, it must have been "published" in order for petitioner to have a cause of action for resulting damages. "Publication" is a word of art; it is defined in the Restatement, Torts § 577 (1938) as "communication intentionally or by a negligent act to one other than the person defamed." Thus, there was a publication of the report when respondent gave it to Credit Bureau Services on March 13, 1973. Respondent contends that petitioner's cause of action accrued on this date and was barred by limitations one year thereafter.

Petitioner urges us to adopt the "discovery rule" in this case, whereby the statute of limitations does not begin to run until the injured party learns of, or in the exercise of reasonable diligence should have learned of, the injury or wrong giving rise to the cause of action. Texas decisions have adopted the discovery rule in limited types of cases: causes of action for fraud; actions for damage to plaintiff's land from water seepage; and, more recently, in certain malpractice cases. For a more complete discussion of the extent to which Texas has adopted the discovery rule, see *Gaddis v. Smith*, 417 S.W.2d 577 (Tex.1967). In *Gaddis*, this Court held that, in a suit for damages caused by the negligence of a surgeon in leaving a foreign object in the body of his patient, the statute of limitations begins to run when the patient learns or should have learned of the presence of the foreign object. In *Hays v. Hall*, 488 S.W.2d 412 (Tex.1972), we held that, in malpractice cases arising from negligence of a physician in performing a vasectomy operation, the statute of limitations runs from the date that the facts concerning the failure of the operation were or should have been discovered.

---

1. We note here that the limitation provision of the Fair Credit Reporting Act, 15 U.S.C.A. § 1681p (1974), which provides a two-year limitation period for actions to enforce liabilities created by the Act, has no application to this case. The two-year limitation provision of § 1681p applies only to suits against a "consumer reporting agency," as defined in the Act, or suits against a "user of information" furnished by such an agency, for willful or negligent failure to comply with any requirement imposed by the Act. §§ 1681n, 1681o.

The reasons stated in the *Gaddis* and *Hays* opinions for adopting the discovery rule in those situations are peculiarly applicable to the present case. A person will not ordinarily have any reason to suspect that he has been defamed by the publication of a false credit report to a credit agency until he makes application for credit to a concern which avails itself of the information furnished by the credit agency. Thus, in many cases the injured party may not learn of the existence of the libelous report until several months after its publication to the credit agency. Considering the relatively short period of limitation for libel actions, the occasion may often arise when the injured party cannot learn of the existence of his cause of action before the statutory limitation period has expired.

Weighing against the above considerations is the policy behind statutes of limitation: to compel the assertion of claims within a reasonable period, while the witnesses and evidence are still available. This policy is especially applicable to defamation actions because of the intangible nature of the evidence and of the injury itself.

■ We have carefully considered these opposing policy considerations and have concluded that the discovery rule should apply in this case. It is a rare individual in modern society who does not rely upon credit in the transactions of his personal and business affairs. While the pervasive use of credit reporting agencies makes acquisition of credit much easier and more efficient, it also creates a potential for great abuse by those who would use the system to wrongfully injure the credit reputation of another. We believe that a rule by which limitations would commence from the date of the wrongdoer's report to the credit agency would merely enhance that potential. We therefore hold that the period of limitations for causes of action for libel of one's credit reputation by publication of a defamatory report to a credit

2. The Supreme Court of Illinois has recently adopted the discovery rule for libel actions, under circumstances very similar to those

agency begins to run when the person defamed learns of, or should by reasonable diligence have learned of, the existence of the credit report.[2] We would not apply the discovery rule where the defamation is made a matter of public knowledge through such agencies as newspapers or television broadcasts.

Since the summary judgment proof does not show as a matter of law that petitioner knew or should have known of the existence of the credit report more than one year before petitioner's suit was filed, the trial court's summary judgment for respondent was improper. Our conclusion makes it unnecessary for us to consider petitioner's other points of error.

The judgment of the Court of Civil Appeals is reversed, and the cause is remanded to the trial court for further proceedings in accordance with this opinion.

before us here, in Tom Olesker's Exciting World of Fashion v. Dun and Bradstreet, 61 Ill.2d 129, 334 N.E.2d 160 (1975).