**Devera WAXLER, Appellant,**

v.

**HOUSEHOLD CREDIT SERVICES, INC., Appellee.**

No. 05–02–01065–CV.

Court of Appeals of Texas, Dallas.

April 30, 2003.

Supplemental Opinion Overruling Rehearing
June 23, 2003.

Michael L. Langley, Michael L. Langley, P.C., Richardson, for Appellant.

David Scott Curcio, Boudreaux Leonard & Hammond, Houston, for Appellee.

Before Justices WRIGHT, FITZGERALD and LANG.

## OPINION

Opinion By Justice LANG.

Devera Waxler ("Waxler") appeals the summary judgment rendered against her in favor of Household Credit Services, Inc. ("HCS"). In two issues, Waxler contends the trial court erred in ruling that her negligence and gross negligence claims were barred by the statute of limitations because (1) she filed suit less than two years after her cause of action accrued, or (2) alternatively, HCS's actions constituted a "continuing tort," which ceased within two years of Waxler filing this lawsuit. For reasons that follow, we resolve Waxler's first issue in her favor. Accordingly, we reverse the trial court's order and remand this cause for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

Waxler was the holder of a credit card issued by HCS. On August 14, 1998, Waxler made payment on her account by a personal check in the amount of $605.12. However, sometime in September 1998, HCS incorrectly encoded the check for $105.12. Waxler realized the discrepancy in her bank statement and contacted HCS to inform it of its error. On September 25, 1998, Waxler's bank credited HCS the additional $500, as reflected by Waxler's October 1998 bank statement. Nonetheless, HCS notified Waxler that she was delinquent and made demand for payment. By October 28, 1998, HCS had admitted its error, but asked Waxler to send documentation reflecting that the bank had made the $500 payment. Waxler did so, and despite her subsequent efforts to compel

the correction, HCS refused. In March 1999, HCS issued a negative credit report as to Waxler's creditworthiness. HCS thereafter made similar negative reports in each of the next four months. Finally, in August 1999, HCS issued a credit report stating that the $500 unpaid bill had been charged off as a bad debt.

In October 2000, appellant applied for a credit card from Chase Bank. On November 6, 2000, Chase notified Waxler that it had denied her application based on a negative credit rating. The only negative report on Waxler's credit history was from HCS. Waxler filed this lawsuit on July 16, 2001, alleging she had been damaged by HCS's negligence and gross negligence respecting the filing of the negative credit reports and the charge-off report. After discovery, HCS filed a motion for summary judgment claiming that Waxler's negligence claims were barred by the two-year statute of limitations. The trial court agreed and granted summary judgment.[1]

### STATUTE OF LIMITATIONS

The only issue before us is whether the trial court's granting of summary judgment was proper on the grounds that Waxler's negligence claims were barred by the statute of limitations. Because we conclude summary judgment was not justifiable, we reverse the judgment of the trial court.

### A. Standard of Review and Applicable Law

We review a summary judgment de novo. *Dickey v. Club Corp. of Am.*, 12 S.W.3d 172, 175 (Tex.App.-Dallas 2000, pet. denied). The standards for reviewing a traditional summary judgment are well established. *See Sysco Food Servs. v. Trapnell*, 890 S.W.2d 796, 800 (Tex.1994); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). We disregard all conflicts in the evidence and accept as true all evidence supporting the nonmovant. *See Fought v. Solce*, 821 S.W.2d 218, 219 (Tex.App.-Houston [1st Dist.] 1991, writ denied).

When a defendant moves for summary judgment based on the affirmative defense of the statute of limitations, he assumes the burden of showing as a matter of law that the suit is barred by limitations. *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 80–81 (Tex.1989). The limitations period begins to run when the cause of action accrues, and the date of accrual is a question of law. *See Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex.1990); *Black v. Wills*, 758 S.W.2d 809, 815 (Tex.App.-Dallas 1988, no writ). Negligence claims must be brought "not later than two years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE ANN. § 16.003 (Vernon Supp.2003). Because the statute does not define or specify when accrual occurs, we look to the common law to determine when a cause of action accrues. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 750 (Tex.1999).

The elements of a cause of action for negligence are well established: (1) a

---

1. The record shows the trial court granted only a partial motion for summary judgment. After HCS filed its motion, Waxler amended her petition to add a claim for breach of contract. The trial court granted summary judgment on Waxler's negligence claims, and the case went to trial on the breach of contract claim. Following Waxler's case-in-chief, the trial court granted HCS's motion for directed verdict. As the disposition of the entire case is now final, Waxler appeals the summary judgment on her negligence claims. However, the only claims she appeals are her negligence and gross negligence claims, and any arguments she may have had on the breach of contract claim are not before us in this appeal.

legal duty owed by one person to another; (2) a breach of that duty; (3) the breach was an actual cause of injury; and (4) actual injury. *See Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990). "Because actual injury is an element of a negligence claim, '[a]n action for negligence cannot be maintained unless some damages result therefrom.'" *Deloitte & Touche v. Weller,* 976 S.W.2d 212, 215 (Tex.App.-Amarillo 1998, pet. denied) (quoting *Johnson v. Sovereign Camp, W.O.W.,* 125 Tex. 329, 335, 83 S.W.2d 605, 608 (1935)). "As a general rule, tort actions accrue, so as to start the running of limitations, when the elements of duty, breach, *and* resulting injury or damage are present." 54 C.J.S. *Limitations of Actions* § 164 (1987) (emphasis added); *see also Black,* 758 S.W.2d at 816. The Texas Supreme Court agrees that a cause of action in tort generally accrues when the tort is committed, but the court has emphasized that "[a] legal injury must be sustained, of course, before a cause of action arises." *Atkins v. Crosland,* 417 S.W.2d 150, 153 (Tex.1967) (citations omitted).

■■■ The first step in calculating when the statute of limitations begins to run against an action sounding in tort is to determine whether the act causing the damage itself constitutes a legal injury. *Id.* If the act complained of is itself a legal injury to a plaintiff, the wrong is "completed" and the cause of action accrues "from the time the act is committed, even where little, if any, actual damage occurs immediately on commission of the tort." *Id.* Conversely, if the act complained of is *not* itself unlawful and the plaintiff sues to recover damages subsequent to that act, the cause of action accrues "when, and only when, the damages are sustained." *Id.*

**B.  Application of Law to the Facts**

Waxler argues her claim accrued when she was denied credit by Chase Bank on November 6, 2000. Alternatively, she argues HCS's negative credit reporting was a "continuing tort." Under this latter theory, her cause of action accrued in August 1999, when the last negative credit report was issued, which stated that the $500 debt had been charged off. Under either of her alternative theories, the claim is not barred by the two-year limitations period since her petition was filed on July 16, 2001. HCS responds by contending that Waxler's cause of action accrued when HCS wrongfully encoded her check and informed her that she still owed $500. That event, which occurred in September 1998, would render her July 2001 petition untimely.

**1.  Identifying the Tortious Conduct**

In order to test the contentions of the parties, we must identify when the injury occurred. HCS repeatedly contends that the "alleged wrongful act" was the "misrecording of a check" and that Waxler's "legal injury" was "the encoding error." HCS even goes so far as to say that Waxler's application and subsequent denial for credit by Chase Bank was a "fortuitous event" which "did not create a new injury." However, Waxler's complaint is premised on the denial of credit by Chase Bank on November 6, 2000. This denial stemmed from HCS's having negligently issued credit reports that erroneously reported Waxler had not paid her bill to HCS and that her account was charged off to bad debt because it remained unpaid. Waxler claims the negligent acts of issuing the erroneous credit reports occurred despite the fact that HCS acknowledged it was responsible for the encoding error and even though Waxler sent HCS verification of her payment long before the erroneous credit reporting occurred. Therefore, ac-

cording to Waxler, the accrual date that must be determined for statute of limitations purposes pivots, at the very earliest, upon Waxler's allegations of negligence as to negative credit reporting and charging-off to bad debt, which ended in August 1999. Waxler suggests that the latest the accrual date could be was the date Chase Bank denied her credit because of the erroneous credit report, or November 6, 2000.

## 2. Accrual Under General Tort Principles

In regard to the time of accrual, *Atkins v. Crosland,* 417 S.W.2d 150 (Tex.1967), is instructive. There the plaintiff, an owner and operator of several automobile service stations, hired an accountant to prepare his income tax returns in 1958. The accountant used the cash receipts and disbursement method of accounting instead of the accrual method. In 1960, the accountant decided to change to the accrual method. This change resulted in an apparent tax liability of nearly $12,300 less than if he had continued to employ the cash method. However, the accountant failed to secure the consent of the commissioner of internal revenue before changing accounting methods, as required by the Internal Revenue Code. Thereafter, in October 1961, the IRS assessed plaintiff with a tax deficiency in the amount of the $12,300 difference. Plaintiff sued the accountant in September 1963, alleging that he had been negligent in (1) originally adopting the cash method of accounting instead of the accrual method; (2) failing to obtain the permission of the commissioner before changing to the accrual method; and (3) failing to warn plaintiff of his potential tax problem so that plaintiff could pay off his accounts payable before the end of the 1960 tax year. The accountant filed a motion for summary judgment based upon the statute of limitations. The

trial court granted the motion, finding that plaintiff's lawsuit, filed in September 1963, was barred by the two-year statute of limitations since all of the alleged negligent acts had occurred before the end of December 1960. The supreme court reversed, holding that the plaintiff's cause of action did not arise until the IRS assessed the tax deficiency in October 1961. *See Atkins,* 417 S.W.2d at 153.

The accountant's use of the cash method instead of the accrual method was not "in itself the type of unlawful act which, upon its commission, would set the statute [of limitations] in motion." *Id.* The plaintiff had not been "injured" until the assessment. Thus, the court stated that "assessment was the factor essential to consummate the wrong—only then was the tort complained of completed." *Id.* The court reasoned that if the tax deficiency had never been assessed, the plaintiff would not have been harmed and would have had no cause of action. "In short, in the absence of assessment, injury would not have inevitably resulted." *Id.*

Waxler's fact situation is analogous to that found in *Atkins.* The acts alleged by Waxler—issuing a negative credit report and charging an account off to bad debt—are not themselves unlawful. No injury was caused to her at that point. Her cause of action for negligence could only accrue when she sustained damages resulting from these actions. The denial of credit was "the factor essential to consummate the wrong—only then was the tort complained of completed." *See id.* From a factual standpoint, we are persuaded that Waxler was not injured until Chase Bank denied her credit card application based on the negative reports from HCS.

We have carefully considered HCS's argument that the damage occurred upon the "misrecording" since the "misrecord-

ing" of Waxler's check gave rise to HCS's statements in credit reports that she had not paid her debt. HCS claims the "misrecording" is the point when Waxler's "legally protected interest was invaded" and "when any wrong was completed." At first blush, the proposition appears to hold some validity. However, HCS's position will not withstand the test of careful and complete analysis of the claim alleged by Waxler.

HCS has failed to carefully consider numerous pivotal factors. One cannot stop at the "misrecording" event in this analysis. There is no dispute that shortly after the "misrecording," there was a series of communications between Waxler and HCS and that in a letter of October 28, 1998 HCS admitted its failure to properly encode the full amount of Waxler's check. Yet, even after this October 28 admission, HCS persisted in demanding that Waxler pay the $500 difference between her check and the "misrecorded" amount. Up to that point, the dispute between Waxler and HCS was private. However, in March 1999, HCS issued the first of five negative credit reports as to Waxler's creditworthiness. It is significant that, at this juncture, when HCS issued the first negative credit report, the scenario was no longer one which involved *only* HCS and Waxler. The issuance of the credit report changed a private argument into a public statement available for all the world to see *and* act

upon. There could be no violation of Waxler's rights with respect to her relationship with third parties like Chase Bank unless *and* until HCS issued the erroneous public credit report. Waxler's loss of credit negligence claim is distinct from any negligence respecting the "misrecording" event.[2] Nevertheless, before we reach a final conclusion on this analysis, we must address the authorities that HCS urges we are bound to follow.

### 3. Appellee's Theory Has Not Been Accepted By Other Courts

HCS cites *Black v. Wills*, 758 S.W.2d 809, 816 (Tex.App.-Dallas 1988, no writ), and *Deloitte & Touche v. Weller*, 976 S.W.2d 212, 216 (Tex.App.-Amarillo 1998, pet. denied), in support of its argument. Because HCS claims these cases bind us in finding that Waxler's cause of action accrued at the time of erroneous encoding, we must carefully address them.

### a. The *Black v. Wills* and *Deloitte & Touche v. Weller* Cases

*Black v. Wills* was a legal malpractice appeal decided by this Court. The plaintiff filed a lawsuit against his attorney in April 1985 for negligent misrepresentation stemming from the attorney's failure to appear for trial on its scheduled date in November 1982. This Court held that actions for legal malpractice were in the nature of a tort and were thus governed by a two-year statute of limitations. *Black,*

---

2. HCS contends that Waxler's own pleadings show that her legal injury resulted from the 1998 "misrecroding." Waxler's petition states: "[HCS] refused and continues to refuse to acknowledge that it was ever paid the $500. [HCS] continued to show [Waxler] delinquent on her account and continued to harass [her] about making payment.... [HCS] shows [Waxler] has not paid the $500." However, in the subsequent paragraph of her petition, Waxler alleges that (1) HCS incorrectly and falsely reported her as being delinquent on the $500 debt and (2)

HCS refused to remove the delinquency from her credit reports. Contrary to HCS's contention, we think Waxler alleged several grounds under the general term "negligence." Because the trial court incorrectly determined the statute of limitations barred Waxler's claim as to the negligent credit reporting, we need not and do not address the applicability of the statute of limitations to Waxler's claim for HCS's failure to acknowledge its error and harassment as it relates specifically to her account with them.

758 S.W.2d at 814. We also noted in the *Black* case that the supreme court had directed us to apply the "discovery rule" for legal malpractice cases.[3] We then held that the discovery rule should apply in a legal malpractice case only when the plaintiff pleads and proves "discovery facts." *Id.* at 816. On the other hand, if a plaintiff fails to plead and prove discovery facts, the "legal injury rule" should determine when his cause of action accrues. *Id.* Having determined that the plaintiff in *Black* failed to plead and prove discovery facts, we stated the "legal injury rule" as follows: "Under the 'legal injury' rule, a cause of action sounding in tort generally accrues when the tort is completed, that is, the act committed *and damage suffered.* ... This is the date of legal injury and the statute of limitations begins to run at that time." *Id.* (emphasis added) (citations omitted). Therefore, we affirmed the granting of summary judgment on limitations grounds because the "legal injury" occurred when plaintiff suffered damages (i.e., when his case was dismissed). *Id.*

In *Deloitte & Touche v. Weller,* the defendant accounting firm was sued for the allegedly negligent preparation of tax returns for the general partner of a limited partnership, which had been designed and operated as a registered tax shelter. Defendant had prepared the general partner's 1986 tax returns to include a $95 million agricultural pasturage deduction. Based on the information they received from the general partnership, the limited partners took deductions on their individual returns commensurate with their investment in the limited partnership. After an audit, the IRS notified the general partner on May 7, 1990 that it was disallowing its 1986 pasturage deductions. The general partner notified all the limited partners of the disallowance by May 30, 1990, and then entered into negotiations for a settlement agreement with the IRS, which concluded in November 1991. The limited partners filed a class action against the defendant for accounting malpractice on May 26, 1992.

The Amarillo court restated the rule from *Atkins* that a plaintiff's cause of action sounding in tort accrues "when the tort is committed.... *A legal injury must be sustained, of course, before a cause of action arises.*" *Weller,* 976 S.W.2d at 215 (quoting *Atkins,* 417 S.W.2d at 153) (emphasis appears in *Weller* opinion). The *Weller* court then stated, "It has long been the rule that a legal injury in tort occurs when the tort is committed *and damage suffered.* ... It has also been the rule that a cause of action only accrues when facts come into existence supporting *each element of the tort.*" *Weller,* 976 S.W.2d at 215 (emphasis added) (citations omitted).[4]

---

**3.** *See Willis v. Maverick,* 760 S.W.2d 642, 646 (Tex.1988). The discovery rule provides that a plaintiff's cause of action accrues "at the time the plaintiff discovers, or should have discovered, in the exercise of reasonable care and diligence, the nature of the injury." *See Black,* 758 S.W.2d at 816.

**4.** The *Weller* court noted that the supreme court's precedent had established that "legal injury" in professional advice cases occurred when the advice was taken, but the case law also clarified that the discovery rule could and often would delay the accrual date in such malpractice cases to the date a plaintiff knew or should have known of the existence of the wrongful act and injury. The remainder of the *Weller* opinion is focused on the application of the discovery rule and the agency law issue of whether an IRS deficiency notice to a general partner may be imputed to limited partners. *See id.* at 216–19. The court ultimately held that the limited partners were deemed to have received the deficiency notice when the general partner received it on May 7, 1990, and that was the date which stopped the delaying effect of the discovery rule. *Id.* at 219. Therefore, the court held that plaintiffs' May 26, 1992 suit was beyond the two-year statute of limitations. *Id.* De-

It is clear that the *Black* and *Weller* cases stand for the proposition that no cause of action accrues until there is a legal injury (i.e., when damage is suffered). Even though these cases were offered by HCS, they actually support Waxler's argument that her cause of action accrued in November 2000.

### b. Cases Brought Under Non Negligence Theories Of Recovery

We have located several cases involving strikingly similar factual circumstances to the case at bar. However, the plaintiffs in these cases brought suit under theories of recovery other than negligence. Yet, we find the cases instructive in reaching our decision. For example, in *Hyde v. Hibernia National Bank,* the United States Court of Appeals for the Fifth Circuit addressed the issue of when a plaintiff's cause of action accrued under the Fair Credit Reporting Act (FCRA),[5] which requires "consumer reporting agencies"[6] to adopt reasonable procedures for compiling and dispersing consumer credit and other information "in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information."[7] *See Hyde v. Hibernia Nat'l Bank,* 861 F.2d 446, 446–49 (5th Cir.1988). Suits under the FCRA, like negligence claims in Texas, have a two-year statute of limitations, but the FCRA requires that claims must be brought within two years "from the date on which liability arises." 15 U.S.C.A. § 1681p (West 1997). The *Hyde*

court stated that the FCRA statute of limitations "must be read against the background of principles applicable to the limitation of actions for tort liability," which do not usually begin to run *"until the tort is complete."* *Hyde,* 861 F.2d at 448 (emphasis added). Because actual loss or damage to another's interests is "a component of [a] cause of action based on negligence," the Fifth Circuit held that "[p]roof of damage is thus an essential part of the plaintiff's case." *Id.* The *Hyde* court then discussed and analyzed four possibilities for when the statute of limitations should begin to run under the FCRA. The court stated,

> The day the report is transmitted to a user is usually the date on which injury is inflicted, since that report is used by the institution as the basis for its denial of credit to the consumer. *Because the tort is inchoate until the victim is injured,* the date upon which the erroneous information is transmitted by the credit agency to the potential user corresponds to the date on which the limitations period for the tort begins.

*Id.* at 449 (emphasis added). Thus, under the FCRA, where instances of alleged negligence are committed by "credit reporting agencies," a plaintiff's cause of action accrues when the reporting agency commits the negligent act (i.e., when it issues the negligent report to a third party). *Id.*

Another example involving a different cause of action is found in *Kelley v. Rinkle,* where the plaintiff brought a suit for libel

spite *Weller's* analysis of the application of the discovery rule, its language relating to *Atkins* and the time of accrual under general tort principles informs us with regard to the outcome of the instant case.

**5.** Fair Credit Reporting Act, 15 U.S.C.A. §§ 1681a–1681v (West 1997).

**6.** The FCRA defines the term "consumer reporting agency" as "any person which, for monetary fees, ... regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties." 15 U.S.C.A. § 1681a(f).

**7.** 15 U.S.C.A. § 1681(b).

against his dentist for filing a negative credit report on a debt for which plaintiff maintained he had already paid. *See Kelley v. Rinkle*, 532 S.W.2d 947, 947 (Tex. 1976). At issue was when the libelous report had been "published" for purposes of accrual under the statute of limitations. The dentist argued the cause of action accrued when he issued the credit report to the credit reporting agency. The trial court granted summary judgment in favor of the dentist on limitations grounds, but the supreme court reversed. The court noted that a "person will not ordinarily have any reason to suspect that he has been defamed by the publication of a false credit report to a credit agency *until he makes application for credit to a concern which avails itself of the information furnished by the credit agency*." *Id.* at 949 (emphasis added). The court was particularly concerned that "in many cases the injured party may not learn of the existence of the libelous report until several months after its publication to the credit agency." *Id.* Therefore, the court held that a discovery rule should apply in libel cases arising when one party defames another by publishing a false credit statement. "While the pervasive use of credit reporting agencies makes acquisition of credit much easier and more efficient, it also creates a potential for great abuse by those who would use the system to wrongfully injure the credit reputation of another." *Id.* Thus, the supreme court refused to recognize a rule whereby a wrongdoer could insulate himself from the consequences of his own wrongful conduct on the grounds that the statute of limitations had run. *Id.*

We have found no case law describing facts identical to the case before us where the plaintiff's cause of action has been exclusively grounded in negligence. Likewise, we have found no cases accepting HCS's argument as to when Waxler's cause of action accrued under these factual circumstances. However, it is our conclusion that HCS's encoding error and the later reporting of Waxler's account as a charge-off were "inchoate" until Waxler was injured by the denial of credit. *See Hyde*, 861 F.2d at 449. The denial of credit was the point when the legal injury was sustained and the cause of action accrued.

## Conclusion

We conclude HCS has not satisfied its burden of showing, as a matter of law, that Waxler's claims for negligence and gross negligence are barred by limitations. We hold that the date of accrual of Waxler's claims was November 6, 2000, the date she was denied credit by Chase Bank. Because she filed this lawsuit on July 16, 2001, less than two years after accrual of her cause of action, the trial court erred in granting summary judgment in favor of HCS on limitations grounds. Accordingly, we resolve Waxler's first issue in her favor.

Having determined Waxler's negligence and gross negligence claims were not barred by the statute of limitations, we reverse the trial court's judgment as to those claims and remand for further proceedings consistent with this opinion. Because of our disposition of Waxler's first issue, we need not decide whether HCS's actions constituted a continuing tort. *See* TEX.R.APP. P. 47.1.

## SUPPLEMENTAL OPINION

Household Credit Services, Inc. (appellee), filed its Motion for Rehearing of this court's Opinion issued April 30, 2003, in which we reversed a summary judgment denying Ms. Waxler's (appellant), negligence and gross negligence claims and remanded for further proceedings. In its motion, appellee complains, *inter alia*, of three points noted by us in the FACTUAL AND PROCEDURAL BACKGROUND section of our opinion. Appellee claims the opinion incorrectly concludes:

1. That Household Credit incorrectly recorded the check. Household Credit claims a third party incorrectly recorded the check.

2. That Ms. Waxler's bank statement reflects a $500 payment to Household credit;

3. That Ms. Waxler provided any proof or verification of a $500 payment to Household Credit.

As stated in our opinion, for the purposes of summary judgment review we disregard all conflicts in the evidence and accept as true all evidence supporting the nonmovant. *See Fought v. Solce,* 821 S.W.2d 218, 219 (Tex.App.—Houston [1st Dist.] 1991, writ denied). Whether or not the points challenged by appellee are proven, they do not affect our analysis of the accrual of appellant's cause of action or the applicability of the statute of limitations. Accordingly, having acknowledged that the points listed above are not conclusively determined facts, we deny appellee's motion for rehearing.