# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 21, 2013

No. 12-40764

Lyle W. Cayce
Clerk

GARRISON REALTY, L.P.,

Plaintiff

GARRARD CONSTRUCTION GROUP, INC.,

Intervenor Plaintiff - Appellee Cross Appellant

v.

FOUSE ARCHITECTURE & INTERIORS, P.C.,

Defendant - Appellant Cross Appellee

Appeals from the United States District Court
for the Eastern District of Texas
USDC No. 2:10-CV-576

Before REAVLEY, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:[*]

This appeal arises from a dispute in connection with the construction of a nursing home facility in Garrison, Texas. The builder of the facility, Garrard Construction Group, Inc. ("Garrard"), sued the facility's architect, Fouse Architecture & Interiors, P.C. Both parties appeal following a jury verdict in favor of Garrard on claims of negligence and negligent misrepresentation. We

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

AFFIRM in part and REVERSE in part, and REMAND for modification of the judgment.

## I.

In 2008, Garrard entered into a contract with Garrison Realty, L.P. to be the general contractor on construction of a nursing home facility designed by Fouse. Pursuant to the contract, Fouse was to act as the communication conduit between Garrard and Garrison. Fouse also set the initial budget on the project of $2.8 million. This amount was set forth in the contract as the guaranteed maximum price. Garrard had concerns about meeting that price, however, because its bid had been approximately $3.2 million. It therefore included an exhibit in the contract stating that all parties recognized the contract price had not been met and that the parties would cooperate in completing the project as close to the maximum price as possible. According to Garrard, Fouse assured it that the owner, Garrison, would work with Garrard in good faith negotiation of the price.

The contract provided for cost-plus remuneration, with Garrard to receive its costs plus an eight percent profit. During the course of construction, numerous change orders were required because Fouse's design plans were allegedly faulty. These change orders increased the cost of the project. Fouse approved the change orders and again assured Garrard that Garrison would pay the increased costs. Fouse allegedly did not communicate with Garrison about the changes, however, nor did it send to Garrison the exhibit that Garrard had included in the contract. Garrison refused to pay the additional costs of the project, and two lawsuits ensued.

In the first suit, Garrison sued both Garrard and Fouse. Garrard, which had placed a lien on the facility, counterclaimed against Garrison. Garrison and Garrard entered a settlement, and Fouse was dismissed without prejudice. Garrison then initiated the instant suit against Fouse, and Garrard intervened as a plaintiff. Garrison settled its claims against Fouse, leaving only claims and

counterclaims between Garrard and Fouse to be tried to the jury. Garrard prevailed on claims of negligence and negligent misrepresentation. On the negligence claim, the jury awarded Garrard $330,000 for additional expenses incurred by Garrard and $256,000 in lost profits. On the negligent misrepresentation claim, the jury awarded Garrard $125,000.

The district court reduced the negligence award by applying an offset from Garrard's settlement with Garrison in the first suit. Fouse appeals from the jury verdict and the award of damages. Garrard cross-appeals the district court's application of the offset. We address Fouse's claims first.

II.

A.

Fouse argues first that (1) Garrard lacked standing because Garrard's claims are barred by the economic loss rule and (2) as a settling defendant in the first suit, Garrard may not, under Texas law, seek contribution from Fouse. These arguments fail.

Although Fouse admitted during oral argument that it raised the economic loss rule for the first time on appeal, it argues that it may do so because the rule implicates Garrard's standing, and therefore the court's jurisdiction. It reasons that because it owed no duty in tort to Garrard, Garrard lacked standing and the economic loss rule prevents Garrard's recovery of what are essentially contract damages. But whether Fouse owed a legal duty to Garrard is an element of the tort claims, not a component of standing that implicates the court's subject matter jurisdiction. *See, e.g.*, *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004) (stating the elements for a negligence cause of action). Whether a party has standing is a distinct question from whether it has asserted a valid cause of action. *See Davis v. Passman*, 442 U.S. 228, 239 n.18, 99 S. Ct. 2264, 2274 n.18 (1979). Here, Garrard alleged that it suffered injury in the form of increased costs and lost profits as a result of Fouse's negligent design of the project, its negligence in communicating between

3

No. 12-40764

Garrard and Garrison, and its negligent or false assurances that Garrison was aware of the increased costs and would pay Garrard.  Garrard has sufficiently alleged an injury caused by Fouse that is redressable by the court.  *See Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 560 (5th Cir. 2001) (stating requirements for standing).  Because Fouse's economic-loss-rule argument does not implicate standing and is raised for the first time on appeal, we decline to address it.  *See LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007) ("[A]rguments not raised before the district court are waived and cannot be raised for the first time on appeal.").  With respect to the argument that Garrard's damages claim was an impermissible claim for contribution, Garrard's settlement of claims against Garrison were primarily as a plaintiff.  There is no showing that Garrard paid a disproportionate amount to Garrison as compensation for a common liability with Fouse.  Fouse's reliance on *Beech Aircraft Corp. v. Jinkins*, 739 S.W.2d 19, 22 (Tex. 1987), is inapposite.

B.

Fouse next argues that Garrard's recovery of damages for both negligence and negligent misrepresentation amounted to an impermissible double recovery.  Based on our review of the evidence and the circumstances of this case, we agree.

In Texas, a party may not recover twice for the same injury under different legal theories.  *See, e.g., Hart v. Moore*, 952 S.W.2d 90, 97 (Tex. App.–Amarillo 1997, *pet. denied*) ("Double recoveries for alternative measures of damages are not permitted.") (citing *Birchfield v. Texarkana Mem'l Hosp.*, 747 S.W.2d 361, 367 (Tex. 1987)).  The jury awarded Garrard $330,000 in additional costs and $256,000 in lost profits on the negligence claim.  The jury also awarded $125,000 in economic loss for negligent misrepresentation.  Fouse argues that Garrard failed to show distinct injuries arising from the claims of negligence and negligent misrepresentation and relied on the same evidence in support of both claims.  Fouse is correct.

4

Garrard relied primarily on two documents in support of its damages claim, and counsel referred to both as justification for the negligence and negligent misrepresentation claims when arguing to the jury. First, exhibit 2A, a change order log, listed twenty-nine items that Garrard alleged resulted in change orders and additional expenses. Garrard's theory at trial was that these change orders were necessitated by Fouse's negligence, that Fouse approved the change orders, and that Fouse also assured Garrard that Garrison would pay for the changes. Garrard also presented exhibit 3, a printout from Garrard's accounting software program showing the project costs. Because the contract provided for cost-plus remuneration, Garrard sought to recover as damages not only the additional costs incurred from the change orders shown in exhibit 2A, but also its contracted profit of eight percent of the total project cost shown in exhibit 3.

Exhibit 3 shows that the total cost of the project was approximately $3.2 million. Eight percent of $3.2 million yields the $256,000 that the jury awarded Garrard as lost profits on the negligence claim. The difficulty arises from the amounts awarded for Garrard's economic loss of additional expenses.

Exhibit 2A shows the total amount of change orders to be $567,807. Garrard did not seek to recover this entire amount, however, because it acknowledged that it was paid for some of the changes and that the work for some of the others was never performed.[1] Garrard sought recovery only for work performed for which it was not paid. Excluding the items for which Garrard was paid and the items for which no work was done, Garrard's counsel argued that the remainder owed was $417,000.[2]

---

[1] Testimony from Eric Sluss showed that Garrard received payment for the fire pump, natural gas HVAC units, cabinets/door in breakroom, a freezer, and the dish Net Work System. Testimony also showed that the work was not done for the pavilion and the fencing additions.

[2] It is not clear how counsel derived the amount of $417,000 as our own review of the exhibit shows a higher amount. But since that is what counsel sought from the jury, we will

No. 12-40764

At trial, Eric Sluss testified that Garrard's total damages were $673,000. When Garrard's counsel argued to the jury, he first addressed the negligence claim and also argued that Garrard's damages were $673,000. He urged that the jury should find that Garrard's lost profits were $256,000 and that its additional expenses were $417,000. Significantly, when turning to the negligent misrepresentation claim, counsel argued that the damages *were also $673,000.* He made no distinction between the damages sought for negligence and negligent misrepresentation, and exhibits 2A and 3, upon which counsel relied, do not show a different injury or differentiate between the two theories.[3]

---

accept that number for purposes of the appeal.

[3] Counsel argued to the jury as follows on the two claims:

I am going to go through very quickly with you the damages in this case. We have suffered damages. My client has suffered damages of $417,000 for these things that were promised to be paid and weren't.

You will remember the pavilion isn't at issue, it wasn't done, it was suggested and then not done. And you will remember that the fencing is not at issue because it wasn't done. And then my client testified what they got paid for, they got paid for – on this list [in exhibit 2A] they got paid for No. 6, they got paid for No. 9, they got paid for No. 13, they got paid for No. 15, and they got paid for No. 19. So those aren't at issue. But if you add the rest of those up, it's $417,000.

My client -- there was a profit in that contract because they ended up getting cross ways with the owner because of Mr. Fouse, they ended up losing an 8 percent profit $256,000. So they have lost a total of $673 (sic).

****

If you go on to Question 3 [concerning the negligence claim], it's going to ask you to write in the damages, and we have lost $417,000 as well as $256,000.

And they are going to ask you did Mr. Fouse make a negligent misrepresentation and we believe that the answer to that question is yes. He negligently misrepresented many things to us.

And then there is a damage question and *it's the same amount of money. His negligence, his negligent misrepresentation cost us $673,000.*

(Emphasis added).

6

"When a party tries a case on alternative theories of recovery and a jury returns favorable findings on two or more theories, the party has a right to a judgment on the theory entitling him to the greatest or most favorable relief." *Boyce Iron Works, Inc. v. Sw. Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex. 1988). Here, the jury's award on the negligence claim afforded Garrard the greatest relief and was supported by Garrard's exhibits. As noted, the jury awarded the $256,000 in lost profits (as counsel requested) but $330,000 in additional expenses, slightly less than counsel requested. The award of $125,000 for economic loss due to negligent misrepresentation was an improper double recovery for the same injury. That award was also contrary to the argument of Garrard's own counsel and appears to be based on pure speculation.[4] Therefore, Garrard should have been entitled to a judgment only on the higher award for negligence, and the district court's judgment must be reversed.

## C.

Fouse also raises several arguments challenging the district court's jury charge, the statute of limitations, and various evidentiary issues. None of Fouse's arguments have merit. Fouse asserts that the district court erroneously instructed the jury on the standard of care for architects and improperly placed the standard of care instruction in a section of the charge apart from the definitions of negligence and negligent misrepresentation. The court's charge was virtually identical to the charge that Fouse requested, however, and was consistent with Texas law. *See, e.g., Dukes v. Philip Johnson/Alan Ritchie Architects, P.C.*, 252 S.W.3d 586, 594 (Tex. App.–Fort Worth 2008, *pet. denied*).

---

[4] It might be argued that the jury's combined award for negligence and negligent misrepresentation ($711,000) was close to the total amount argued by Garrard as its damages ($673,000). However, the jury awarded more than even Garrard asserted as its harm, and it cannot be discerned from the record how the jury arrived at the award it made. Although mathematical precision is not required, "damages must be ascertainable in some manner other than by mere speculation or conjecture, and by reference to some fairly definite standard, established experience, or direct inference from known facts." *Richter, S.A. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 939 F.2d 1176, 1188 (5th Cir. 1991).

Furthermore, the court specifically instructed the jury to consider the charge as a whole. We presume the jury followed its instructions, and we see no error in the charge. *See Zafiro v. United States*, 506 U.S. 534, 540, 113 S. Ct. 933, 939 (1993); *United States v. Davis*, 609 F.3d 663, 677 (5th Cir. 2010).

With respect to limitations, claims for negligence and negligent misrepresentation are subject to a two-year limitations period. *See Hendricks v. Thornton*, 973 S.W.2d 348, 364 (Tex. App.—Beaumont 1998, *pet. denied*). Here, the limitations period began "when the elements of duty, breach, *and* resulting injury or damage [were] present." *Waxler v. Household Credit Servs., Inc.*, 106 S.W.3d 277, 280 (Tex. App.—Dallas 2003, *no pet.*) (internal quotation marks and citation omitted); *see also Black v. Wills*, 758 S.W.2d 809, 816 (Tex. App.—Dallas 1988, *no pet.*) ("Under the 'legal injury' rule, a cause of action sounding in tort generally accrues when the tort is completed, that is, the act committed and damage suffered. . . . This is the date of legal injury and the statute of limitations begins to run at that time." (citation omitted)). Garrard was not injured, and its claims did not accrue, until Garrison refused to pay the additional costs that Fouse had assured would be paid, which was "'the factor essential to consummate the wrong—only then was the tort complained of completed.'" *Waxler*, 106 S.W.3d at 281 (quoting *Atkins v. Crosland*, 417 S.W.2d 150, 153 (Tex. 1967)). Fouse did not meet its burden of showing that this occurred outside of the limitations period. *See Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 80–81 (Tex. 1989).

The district court's evidentiary rulings are reviewed for an abuse of discretion. *See Jowers v. Lincoln Elec. Co.*, 617 F.3d 346, 355 (5th Cir. 2010). Fouse has not shown that the district court abused its discretion with respect to any evidentiary issues. Although it challenges the sufficiency of the evidence because it argues that exhibit 2A and exhibit 3 were admitted as improper summaries, Fouse does not address the district court's ruling that the exhibits were admissible as business records pursuant to the hearsay exception of

Federal Rule of Evidence 803(6).  Therefore, this issue is not properly briefed. *See Brinkmann v. Dallas Cnty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987) (holding that the failure to identify error in the district court's legal analysis is the same as failing to appeal the judgment).

Fouse relatedly argues that the district court improperly reconsidered the admission of exhibit 2A after engaging in *ex parte* communication and without giving it time to file a response to Garrard's motion for reconsideration.  Fouse does not mention, let alone analyze, the district court's explanation that Garrard's counsel re-urged the motion during a pretrial conference after informing the court's law clerk merely that he would be doing so.  Nor does Fouse address the court's finding and that Fouse was not entitled under the local rules to file a written response to the oral motion.  There was no *ex parte* communication, and this issue is both frivolous and improperly briefed.  *See Brinkmann*, 813 F.2d at 748.

Finally, Fouse argues that the district court improperly limited the testimony of its expert economic witness, but it fails to explain what the purportedly excluded testimony would have been or what the testimony would have proved, and it does not explain how the district court improperly limited the expert.  Fouse's citation to thirty-five pages of the transcript where its expert's testimony appears, and its conclusory assertion that the district court had no basis to limit the expert's testimony, is insufficient to preserve this issue for review.  *See Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993) (a party may not incorporate by reference arguments made in the district court); *see also* Fed. R. App. P. 28(a)(9).

### III.

We next turn to Garrard's cross-appeal.  Garrard argues that the district court erroneously reduced the jury's damages award by the amount of the settlement it received from Garrison in the first suit.  It argues in part that Fouse did not plead offset as an affirmative defense, and therefore the offset was

waived. It further argues that its damages model at trial had already taken into account the fact that it had recovered some damages from Garrison in the first suit and that in the instant case it sought only damages attributable to Fouse's conduct. It reasons that had it not been surprised by Fouse's belated assertion of the offset defense, it could have submitted additional evidence of damages.

Garrard is correct that an offset due to a settlement credit is an affirmative defense that must be pleaded and proved by the defendant. *See Giles v. Gen. Elec. Co.*, 245 F.3d 474, 494 & n.36 (5th Cir. 2001); *see also Goose Creek Consol. Indep. Sch. Dist. v. Jarrar's Plumbing, Inc.*, 74 S.W.3d 486, 501–02 (Tex. App.—Texarkana 2002, *pet. denied*). The failure to plead an affirmative defense generally results in waiver of that defense. *See Davis v. Huskipower Outdoor Equip. Corp.*, 936 F.2d 193, 198 (5th Cir. 1991); *see also* Fed. R. Civ. P. 8(c).

A court may excuse the failure to plead an affirmative defense, however, if the opposing party is not prejudiced. *Giles*, 245 F.3d at 494; *see Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 350, 91 S. Ct. 1434, 1453 (1971) (stating that the purpose of the pleading requirement in Rule 8(c) is to give the opposing party notice and an opportunity to argue why the defense is inappropriate). This court employs a fact-specific analysis when deciding whether the plaintiff was unfairly surprised. *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999). In *Giles*, for example, we held that the failure to plead offset was excused where both parties had addressed the issue before trial in a motion in limine and in a trial brief. *Giles*, 245 F.3d at 494.

Here, Fouse did not expressly plead an offset or settlement credit as an affirmative defense. It argues, however, that it did plead that Garrard's claims were barred because of the settlement with Garrison. We are not persuaded. Fouse pleaded that "[Garrard's] claims are barred in whole due to its settlement with Plaintiff [Garrison]." Under our fact-specific review, and in the context of this case, Fouse's pleading was insufficient to indicate that it was asserting a defense of offset or settlement credit.

First, the defense did not explicitly assert that an offset or settlement credit should partially reduce any judgment. This is unlike several other affirmative defenses pleaded by Fouse in which Fouse did specifically assert that Garrard's claims were "barred in whole *or in part*" by the various defenses. Had Fouse been seeking a partial reduction of Garrard's claims due to an offset, it logically would have included similar language in the defense concerning the settlement.

Second, all through the pre-trial and trial stages of litigation, Fouse's theory was that Garrard's claims were completely barred because the settlement meant that Garrard was a settling *defendant* and its claims against Fouse amounted to impermissible claims for contribution. This was the only theory that Fouse argued in its motion for summary judgment and in a subsequent motion for reconsideration. Fouse did not raise the prospect of an offset until after the verdict. This is unlike *Giles*, where offset was affirmatively raised in a motion in limine. *See Giles*, 245 F.3d at 494.

Because Fouse neither articulated the theory nor proved the basis for offset, it could not be allowed. *See Woodfield*, 193 F.3d at 362 (stating that a defendant "must plead an affirmative defense with enough specificity or factual particularity to give the plaintiff 'fair notice' of the defense that is being advanced"). In support of its claim of undue surprise, Garrard submitted evidence post-verdict suggesting that its damages model at trial was limited to damages caused by Fouse and did not include any amounts obtained in the first suit. Had Garrard known about Fouse's offset defense, it could have developed this evidence during trial and tried to show that its damages were actually more than those presented in its trial exhibits.

Furthermore, Fouse was aware that Garrard was seeking damages in this suit that were at least similar to claims Garrard had made against Garrison in the first suit, and it therefore knew that offset or a settlement credit might be relevant in this case. Its failure to explicitly plead offset was therefore

unjustified. *Cf. Trinity Carton Co. v. Falstaff Brewing Corp.*, 767 F.2d 184, 194 (5th Cir. 1985) (holding that the district court did not erroneously preclude assertion of affirmative defenses where the defendant failed to raise them until several months after a jury's verdict, and the delay could not be justified because the defendant necessarily knew from the nature of the suit that the affirmative defenses would be relevant). The judgment should not have been reduced by the amount of the offset.

IV.

The district court's entry of judgment on the jury's verdict in favor of Garrard was proper, but we conclude that there was error in the calculation of the damages. The jury's award of $125,000 for negligent misrepresentation was an improper double recovery. Additionally, the application of the offset or settlement credit was erroneous. We remand for the district court to modify Garrard's damages by omitting the $125,000 for negligent misrepresentation and applying no settlement offset.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.